237 So.2d 797 (1970)
ST. REGIS PAPER COMPANY, a Corporation Authorized to Do Business in the State of Florida, Appellant,
v.
STATE of Florida, Acting by and through the Florida Air and Water Pollution Control Commission, Appellee.
No. M-441.
District Court of Appeal of Florida, First District.
July 14, 1970.
Rehearing Denied August 18, 1970.
*798 Kent, Durden & Kent, Jacksonville, for appellant.
Earl Faircloth, Atty. Gen., and Bjorne B. Andersen, Jr., Asst. Atty. Gen., for appellee.
RAWLS, Judge.
By this interlocutory appeal, St. Regis Paper Company presents the following point, viz.: Does the 1967 Florida Air and Water Pollution Control Act require the Commission established therein to exercise its primary jurisdiction, give notice of an alleged violation or fulfill any administrative duties as a condition precedent to the institution of an action for civil penalties under the provisions of Section 403.161, Florida Statutes, 1967, F.S.A.?
The undisputed facts for consideration are: The Air and Water Pollution Control Commission, acting on behalf of the State of Florida, pursuant to the authority contained in Chapter 403, Florida Statutes, 1967, F.S.A., filed its complaint in the Circuit Court of Duval County, alleging therein that St. Regis for a period of 47 days had polluted the St. Johns River by discharging oil in its waters in violation of the Commission's Rule, Section 28-5.02(2). The Commission asked for assessment of a civil penalty not exceeding $1,000 per day for violation of F.S. Chapter 403, F.S.A., with the Commission reserving the right to later seek additional civil damages for tracing the source of the pollution and clearing the waters. St. Regis moved to dismiss the foregoing complaint upon the following grounds: 1. Failure to give written notice as required by § 403.121(1). 2. That such failure to give notice cannot be used retroactively. 3. Notice and tender of a hearing are conditions precedent to the existence of a right to institute said action. The trial judge denied defendant's motion to dismiss, hence this appeal.
The Florida Air and Water Pollution Control Act was enacted in 1967, and created a specialized agency to deal with pollution problems. Prior to 1967 the Florida State Board of Health had been charged with the primary responsibility of dealing with pollution problems. Historically, the legislative, executive and judicial branches of the State of Florida have dealt rather gingerly with industries and governmental agencies who have been guilty of defiling our environment. An applicable aphorism, "Sometimes things have to get worse before they can get better," is appropos when considering the problems of today's environment. Ecology is the "IN" subject of today's citizenry, as it well should be. An airplane pilot can readily recognize the tremendous increase of smoke and haze over the cities of Florida, which only a few years ago enjoyed clear and unlimited visibility. A fisherman in the streams of this State has difficulty escaping floating garbage, noxious odors, and beer cans by the gross. Our beaches, especially those situated in an area where a city pumps its sewage into the ocean, are almost uninhabitable. These are conditions that confront us today. Man, of all animals, pollutes his habitat the greatest. What we have defiled over a period of more than 100 years cannot be sanitized in one day, one month, one year, or by one law. Now is not the time to discard concepts of due process, fair play and substitute "quick justice" in the name of "kill the pollutants."
By the enactment of Chapter 403, the legislature provided the lawful tools to be utilized in restoring man's habitat to a healthy environment. The administrative agency created has been charged with the responsibility of searching out and correcting the problems of pollution. It is primarily a regulatory agency, with law enforcement a secondary responsibility. Section 403.061 sets forth 26 separate paragraphs detailing the Commission's powers and duties. Subsection (1) requires the promulgation of current and long-range plans for pollution abatement; (6) grants to the Commission general supervision of the laws, rules and regulations pertaining to air and water pollution; (7), (8) and (9) authorize rule-making power; (10) provides for enforcement of orders to effectuate *799 control of air and water pollution; and the remaining 16 subsections primarily deal with the promulgating standards to be utilized for the determination of pollution, the prevention of same, and administrative enforcement. It is apparent in analyzing the powers and duties of the Commission that pollution control has been placed primarily in its hands as an administrative agency.
Having concluded that the Commission is vested with broad powers in dealing with air and water pollution problems, we then must come to grips with the critical question of: How is this power to be exercised? Section 403.121 is captioned "Enforcement; procedure" and provides in part:
"(1) If the commission has reason to believe a violation of any provision of this act has occurred, it shall cause written notice to be served upon the alleged violator or violators. The notice shall specify the provision of the law, rule or regulation alleged to be violated, and the facts alleged to constitute a violation thereof, and may include an order that corrective action be taken within a reasonable time. No such order shall become effective except after reasonable notice * * *; except that injunctive relief may be sought as provided under § 403.131." (Emphasis supplied.)
Subsection (2) of § 403.121 provides for hearing and corrective action if the Commission finds a violation has occurred.
The foregoing section details a classic administrative plan for combating pollution. Notice and hearing is provided for the "run of the mill type" offense with injunctive relief being immediately available through the established judicial arm in critical instances.
The Commission strenuously argues that its grant of powers is derived from Chapter 403 and it further has the inherent powers of both the State Board of Health, under Chapter 381, Florida Statutes, F.S.A. and that of the former Air Pollution Control Commission, under Chapter 403, Florida Statutes, F.S.A. It is well settled that a statutory agency does not possess any inherent powers; such agency is limited to the powers granted, either expressly or by necessary implication, by the statutes creating them. Florida Industrial Commission ex rel. Special Disability Fund v. National Trucking Company, 107 So.2d 397 (Fla.App.1st, 1958). Comfort is sought by the Commission from the text, Water Law and Administration, The Florida Experience, authored by Maloney, Plager and Baldwin, in that the authors concluded that the legislature strengthened the enforcement powers of the State especially in § 403.161.[1] With this observation we agree; however, in analyzing this section we fail to find a specific grant to the Commission to institute an independent judicial action seeking civil and criminal penalties prior to complying with the mandatory requirements of § 403.121.
*800 Reading Chapter 403 in its entirety it is our conclusion that the legislative intent was to establish an administrative agency and empower it with necessary authority to combat the defilement of our air and water primarily through administrative action. An essential mandate to this agency is the seeking out of pollutants and presenting to the violator an opportunity to abate the unlawful practice. The emphasis is upon prevention and abatement; not upon enriching the coffers of the State treasury or its prison population. The legislative scheme is primarily directed towards re-establishing a livable habitat for man; not the abatement or elimination of the industries and governmental units which are guilty of polluting our environment.
By its complaint, the Commission alleges that it has known appellant has polluted the waters of the St. Johns River from day to day for a period of 43 days prior to filing said complaint. Of equal importance, the Commission failed to allege that it had taken any administrative action towards the prevention or abatement of such conduct. It did not seek injunctive relief as it is permitted to do in certain instances specified by § 403.131, Florida Statutes, F.S.A.[2] Apparently the Commission was content to sit by and observe the defilement of our natural resources for a long period of time and then by construction of its own rules seek civil penalties in a sum that might well abate the industry.[3]
Chapter 403 is construed to require mandatory compliance by the Commission with the provisions of § 403.121 prior to instituting a proceeding in a court of competent jurisdiction seeking civil or criminal penalties where a continuing violation is charged predicated upon the usual and normal daily operation of the alleged violator's business. Our conclusion does not preclude the Commission from instituting a judicial proceeding for civil or criminal penalties for a single violation arising out of unusual or abnormal activities on the part of the alleged violator.[4] Of course, the provision of the Chapter granting to the Commission the right to seek an injunction is available to the Commission for initial relief without regard to § 403.121 in those circumstances coming within the purview of § 403.131. The trial court is directed to grant the instant motion to dismiss.
Reversed.
JOHNSON, C.J., and SPECTOR, J., concur.
NOTES
[1] "403.161 Prohibition, violation, penalty, intent. 

"(1) It shall be unlawful for any person to cause the pollution of any of the air or waters of this state in violation of or by failure to comply with any order of the commission, including orders or rules fixing standards of air and water quality, or permits issued pursuant to its authority.
"(2) Violation is punishable by a civil penalty of not more than $1,000.00 for the first offense and of not more than $1,000.00 for each offense thereafter. Each day during any portion of which such violation occurs constitutes a separate offense.
"(3) Violation of any order issued by the commission is a misdemeanor and is punishable by imprisonment for not more than one (1) year or a fine of not more than one thousand dollars ($1,000.00) for each violation. Each day during any portion of which such violation occurs constitutes a separate offense.
"(4) It is the legislative intent that the civil and criminal penalties and fines imposed by the court be of such amount as to insure immediate and continued compliance with this act and rules or regulations pursuant thereto."
[2] This section authorizes the Commission to seek injunctive relief if preventive or corrective measures are not taken in accordance with any order of the Commission or if the Director finds that a generalized condition of air or other pollution exists and that such condition creates an emergency requiring immediate action to protect human health or safety.
[3] A 1970 amendment to § 403.161 increased the civil penalty to a maximum of $5,000.00 per day.
[4] For example, a tanker discharging oil in public waters, or the opening or breaking of a dike or dam to discharge sludge into streams, etc.