QUESTION: May the Putnam County Public Hospital Authority utilize its funds for payment of architectural fees for the conversion of its hospital facilities into a nursing home facility or a 12 1/2!mfe!x percent funding for construction of a sheltered workshop for the mentally retarded in Putnam County, either directly or indirectly through the Board of County Commissioners of Putnam County?
SUMMARY: Until Ch. 74-597, Laws of Florida, becomes effective in accordance with its provisions, the Putnam County Public Hospital Authority may not utilize its funds to pay architectural fees for the conversion of its hospital facilities to a nursing home or to assist in the funding of a workshop for the mentally retarded, even though such expenditures have been approved by the Board of County Commissioners of Putnam County. The Putnam County Public Hospital Authority was created by Ch. 29463, 1953, Laws of Florida, to "establish, equip, build and maintain, and in their [sic] sound discretion lease for such term of years as in its judgment is proper to a nationally recognized hospital operation agency" a public hospital in Putnam County. In addition, the authority was vested with all the power and authority of the boards of trustees of county public hospitals as provided by general law, ss. 155.07-155.25, F.S. Under the general law, the boards of trustees of county hospitals are authorized to spend hospital funds only for materials, supplies, equipment, wages, salaries "or other items of expense. . . ." Attorney General Opinion 075-92. Accord: Attorney General Opinion 073-164, ruling that such boards of trustees have no authority to spend accumulated operating revenues to purchase a nursing home as an addition to the hospital facilities. It is well settled that a special governmental entity created by statute to perform a particular public function or purpose has only those powers expressly granted to it by law or those necessarily implied in order to carry out the powers expressly granted. Keating v. State,167 So.2d 46 (1 D.C.A. Fla., 1963). Accord: St. Regis Paper Company v. State, 237 So.2d 797, 799 (1 D.C.A. Fla., 1970); City of Cape Coral v. GAC Utilities, Inc., 281 So.2d 493, 496 (Fla. 1973). Thus, under the special and general laws referred to above, the authority could not validly disburse hospital funds for anything other than hospital purposes. A nursing home and a workshop for the mentally retarded are not proper recipients of such funds under those laws. It appears, however, that the Legislature has adopted a law abolishing the authority, Ch. 74-597, Laws of Florida, the effective date being stated as follows: (a) Upon certification to the Putnam County Public Hospital Authority and Putnam County board of county commissioners that a privately owned, fully licensed hospital of no less than 67 bed capacity has been constructed and is in full operation in Putnam County, Florida, said authority shall assure the transfer and continuing care without cost to the authority of all resident patients and shall thence cease all hospital operations. (b) The transfer and accounting provisions of this act shall be accomplished prior to the expiration of twelve (12) calendar months from the certification as set forth in 7(a) above and this act shall take full force and effect upon said date. (Emphasis supplied.) The 1974 special law abolishing the authority transfers its assets and liabilities to the board of county commissioners with this proviso: All assets . . . after transfer to the board of county commissioners of Putnam County, Florida, shall remain in use and be utilized exclusively for health care purposes and administration thereof. The "certification" provided for by the 1974 act, quoted above, has not yet been made, although it is expected that a hospital in conformance with the provisions of the act will be in operation by October 1, 1975. It also appears that the county commissioners plan to convert the old hospital into an extended care (nursing home) facility under the jurisdiction of the Putnam County Nursing Home Authority; and you have suggested that s. 8 of Ch. 74-597, supra, might authorize the expenditures in question. This section provides that Nothing herein shall be construed to prohibit the Putnam Public County Hospital Authority [sic] from negotiating, selling or transferring supplies, inventory or assets, tangible or intangible with or to any other person, corporation or private or public entity subject to approval of the Putnam County board of county commissioners. This provision does not appear to be a grant of power to the hospital authority and must, of course, be read in connection with other relevant provisions of the general and special laws applicable to the authority limiting the uses to which the hospital assets may be put both before and after its dissolution. As noted above, the 1974 act abolishing the authority does not become effective until such time as another hospital of at least 67-bed capacity has been constructed and is in "full operation" in Putnam County; and the obvious legislative intent was that the authority continue to provide hospital facilities to the citizens of the county until another facility becomes available to them. Thus, s. 8 cannot, consistently with the apparent legislative purpose and intent to have no break in the providing of hospital facilities in Putnam County, be interpreted as authorizing the diversion of hospital funds to other health care purposes prior to the time that the new hospital facilities are in full operation; and it must, then, have been included solely for the purpose of simplifying the transfer of the authority's assets to whatever "health care purposes" are designated by the board of county commissioners after the effective date of the act. This conclusion is in accord with the rule that, ordinarily, a statute is devoid of any effect until its provisions become operative. See 50 Am. Jur. Statutes s. 500 p. 518. The proposed expenditure to assist in the financing of the conversion of the hospital to a nursing home — and, perhaps, also the financial assistance to a workshop for the mentally retarded — could certainly be made by the board of county commissioners (or by the authority, with board approval under s. 8, supra) as soon as the 1974 special act becomes effective. However, until such time, neither the authority nor the board of county commissioners has any statutory power to expend hospital funds for any purpose other than a hospital purpose. It must be concluded, therefore, that the hospital authority is presently without statutory authority, either express or necessarily implied, to divert hospital funds to other health care purposes, either with or without the consent of the board of county commissioners. Accordingly, your question is answered in the negative.