The Honorable Josie L. Davis, Jr. Baker County Property Appraiser 339 East Macclenny Avenue Macclenny, Florida 32063
The Honorable Jim Page Nassau County Property Appraiser Post Office Drawer A Fernandina Beach, Florida 32034
The Honorable Jimmy Alvarez Bradford County Property Appraiser Post Office Box 250 Starke, Florida 32091
Dear Sirs:
This is in response to your request for an opinion on substantially the following questions:
 (1) MAY A GROUP OF PROPERTY APPRAISERS ENTER INTO AN INTERLOCAL AGREEMENT PURSUANT TO s 163.01, F.S. (1982 Supp.), FOR THE PURPOSE OF ACQUIRING, EITHER THROUGH OWNERSHIP OR LEASE, NECESSARY COMPUTER OR DATA PROCESSING EQUIPMENT, HIRING COMPETENT PERSONNEL TO OPERATE SUCH EQUIPMENT, AND LEASING THE NECESSARY BUILDINGS TO HOUSE SUCH EQUIPMENT?
 (2) IS IT NECESSARY TO CREATE A SEPARATE LEGAL ENTITY SUCH AS PROVIDED IN s 163.01(5)(c), F.S. (1982 Supp.), OR MAY AN ORGANIZATION OF THE PARTICULAR PROPERTY APPRAISERS BE ESTABLISHED BY AN INSTRUMENT SUCH AS A CHARTER, AND THROUGH THE BY-LAWS OF THE ORGANIZATION, ESTABLISH THE PARAMETERS OF THE OPERATION OF THE CENTER, INCLUDING NECESSARY PROVISIONS FOR EMPLOYMENT OF PERSONNEL, MANAGERIAL RESPONSIBILITY, AND CHARGES AND RATES FOR SERVICES RENDERED?
 (3) WOULD THE EMPLOYEES OF THE PUBLIC AGENCIES WHO ARE MEMBERS OF THE INTERLOCAL AGREEMENT BE COUNTY EMPLOYEES ENTITLED TO RETIREMENT BENEFITS?
 (4) MAY MONIES FROM THE ASSESSMENT LOAN FUND PROVIDED FOR IN s 195.094, F.S., BE LOANED TO ALL PARTICIPATING PROPERTY APPRAISERS JOINTLY, AS A GROUP, OR TO AN ORGANIZATION ESTABLISHED PURSUANT TO CH. 163, F.S., FOR THE ACQUISITION OF NECESSARY COMPUTER AND DATA PROCESSING EQUIPMENT, OR MAY SUCH MONIES ONLY BE LOANED TO EACH PARTICIPATING PROPERTY APPRAISER INDIVIDUALLY?
 QUESTION ONE
Although the county property appraiser has other express and implied responsibilities, the basic duties of a property appraiser are to assess and list all property located within the county and to place such property on the appropriate assessment rolls. See,e.g., s 193.085 (property appraiser shall ensure that all real property within county is listed and valued on the real property roll), and s 193.114 (property appraiser shall prepare real property assessment roll and the tangible personal property assessment roll). You state that the property appraisers in carrying out their statutorily imposed duties, have utilized data processing and computer equipment as a means of storing information and preparing the tax rolls. Such equipment is also apparently used by the tax collectors with regard to the preparation of the tax bills. Larger counties have a sufficient number of parcels within the county to justify the office of the property appraiser to acquire or lease the necessary data processing and computer equipment for the preparation of the tax roll. The smaller counties, however, generally do not have a sufficient number of parcels to justify the purchase of such equipment to service only the one county in the preparation of the tax roll; the small county property appraisers are therefore generally required to contract with private companies and organizations to supply the necessary data processing services needed by the property appraisers. According to your letter, poor service and delay, and certain `down time' have in the past imposed tremendous hardships on the property appraisers in attempting to fulfill their duties and comply with the statutory time requirements. Some counties have apparently contracted with a single county which either owned or leased the necessary computer equipment so that such property appraiser's tax rolls could be run on the other county's computer and data processing equipment. Seegenerally, s 125.01(1)(p), F.S., authorizing the governing body of a county to enter into agreements with other governmental agencies within or outside the boundaries of the county for the joint performance, or performance by one unit in behalf of the other, of any of either agency's authorized functions. Because of the difficulties which have arisen, the property appraisers of several smaller counties wish to pool their resources in order to purchase or lease appropriate data processing or computer equipment jointly and then use such equipment to service the needs of all such property appraisers. You therefore inquire whether a group of property appraisers may enter into an interlocal agreement pursuant to s 163.01, F.S., for the purposes of acquiring data processing equipment and computer equipment necessary for such appraisers to perform their constitutional and statutory duties of assessing all property in the respective counties and in the preparation of the tax roll for the counties.
This office has previously stated that property appraisers, although constitutional county officers, possess no common law powers but rather their powers and authority are prescribed by statute. See, e.g., AGO 80-65 and 78-94 and authorities cited therein. It is, however, also well recognized within this state that when a statute authorizes a specific act or imposes a duty upon a public officer to accomplish a governmental purpose, it also confers by implication every particular power necessary or proper for the complete exercise or performance of that duty that is not a violation of law or public policy. See, Peters v. Hansen,157 So.2d 103 (2 D.C.A. Fla., 1963), wherein the court upheld a county property appraiser's (then county tax assessor) authority to contract with a private appraisal firm to make a reappraisal and revaluation of the taxable property in his county, stating that such was `well within the scope of the tax assessor's duties.' The court went on to state:
 The assessing of all property in his county at its full cash value imposes a heavy duty upon the tax assessor, which he cannot perform without assistance . . . . He has the implied power to employ persons to do work of a clerical or ministerial nature, requiring no exercise of official discretion, and involving no substantial rights of the persons against whom assessments are made, where such work is done under his supervision, or he ratified or adopts it. (citations omitted)
157 So.2d at 105. See also, In re Advisory Opinion to the Governor, 60 So.2d 285 (Fla. 1952); 67 C.J.S. Officers s 192 (an officer has by implication such powers as are necessary for the due and efficient exercise of those expressly granted, or such as may be fairly implied therefrom); AGO 68-20 (courts have pointed out that assessing officer has implied power to employ others in ministerial or clerical functions to assist him and to provide data and information which will aid him in arriving at his ultimate decision, so long as the assessing officer supervises such activities, or adopts or ratifies such activities). Cf., Molwin Investment Co. v. Turner, 167 So. 33 (Fla. 1933), wherein the Florida Supreme Court held that a county commission could expend public funds to hire auditors as this action could be implied from the commission's statutory duties and responsibilities. Implied powers, however, cannot exist in the absence of express statutory authority or duty. See, e.g., Molwin Inv. Co. v. Turner, supra; Florida Development Commission v. Dickinson, 229 So.2d 6 (1 D.C.A. Fla., 1969), cert. denied,237 So.2d 530 (Fla. 1970). Moreover, the statutes, although not expressly authorizing a property appraiser to contract for data processing or computer services, appear to recognize the authority of a property appraiser to contract for such services. See, e.g., s 195.095(1), F.S., which provides that the Department of Revenue shall accept applications from all persons and firms who desire to contract with property appraisers, collectors, or county commission for assessment or collection services or systems or for the sale of electronic data-processing programs or equipment and that no property appraiser, collector, or county commission maycontract for assessment services or purchase of data-processingprograms or equipment for use by the property appraiser, or collector unless the vendor is on the approved state bidder list.See also, s 195.027(2), F.S., authorizing and requiring the department to adopt rules prescribing uniform standards and procedures for computer programs and operations for all programs installed in any property appraiser's office after July 1, 1973.
Based upon the foregoing, it therefore appears that property appraisers, in carrying out their constitutional and statutory duties, may enter into contracts for the use of or for the purchase of data processing and computer services and equipment.
Section 163.01 F.S. (1982 Supp.), the Florida Interlocal Cooperation Act of 1969, contemplates the joint exercise of any power, privilege or authority which the public agencies involved share in common and which each might exercise separately. See, s163.01(4), F.S. (1982 Supp.). And see, s 163.01(2), F.S. (1982 Supp.), stating that it is the purpose of the section to `permit local governmental units to make the most efficient use of their powers by enabling them to cooperate with other localities on a basis of mutual advantage and thereby to provide services and facilities in a manner and pursuant to forms of governmental organization that will accord best with geographic, economic, population, and other factors influencing the needs and development of local communities.' `Public agency' is expressly defined in subsection (3)(b) of the act to mean, inter alia, `a political subdivision, agency, or officer of this state or of any state of the United States, including, but not limited to, state government, county . . . an independently elected county officer . . . .' Thus, under the foregoing definition, a county property appraiser, as an independently elected county officer, see, s 1(d), Art. VIII, State Const., may enter into an interlocal agreement pursuant to and in accordance with the provisions of s163.01, F.S. (1982 Supp.).
As it is my opinion that a county property appraiser may acquire computer and data processing services and equipment in order to carry out his duties and responsibilities, it appears that pursuant to the terms of s 163.01, F.S. (1982 Supp.), enabling such county officers to jointly exercise those powers which each might exercise separately, several property appraisers may enter into an interlocal agreement for the joint provision and utilization of data processing services. Cf., Inf. Op. to Mr. Gray Dunlap, Attorney for Pinellas County, dated October 23, 1978, in which this office, pursuant to s 163.01(11), F.S. 1977 which required the approval of this office for interlocal agreements, approved an interlocal agreement between Pinellas County and the clerk of the circuit court, the property appraiser, the sheriff, the supervisor of elections, and the tax collector for joint provision and utilization of data processing services. (It should be noted that the statutory requirement for approval of interlocal agreements by the Department of Legal Affairs was deleted in 1979; see, Ch. 79-31, Laws of Florida.) While an interlocal agreement does not relieve a public agency of any obligation or responsibility imposed upon it by law, to the extent that such obligations or responsibilities are performed by one of the parties to the agreement or by a legal or administrative entity created by the agreement, such performance may be offered in satisfaction of the obligation or responsibility. Section163.01(9)(b), F.S. (1982 Supp.) Nor would such an agreement appear to violate the provisions of subsection (14) of the act which prohibits the delegation by interlocal agreement of the constitutional or statutory duties of state, county, or city officers since the services to be provided would appear to be ministerial or clerical in nature.
According to your letter, the property appraisers entering into the interlocal agreement plan to acquire the necessary equipment and property by purchase or lease. While Ch. 274, F.S., generally provides for the control of tangible personal property owned by counties (cf., AGO 60-18 concluding that property purchased with funds of county commission or county officer become county property immediately upon purchase), pursuant to s 163.01(7)(a), F.S. (1982 Supp.), an interlocal agreement may create and provide for a separate legal or administrative entity to administer and execute the agreement. Such an entity may be authorized to acquire, hold and dispose of property in its own name. Section163.01(7)(b), F.S. (1982 Supp.) And see, s 163.01(5)(i), (j) and (k), F.S. (1982 Supp.), which respectively provide that an interlocal agreement may provide for the manner in which purchases shall be made, the acquisition, ownership, lease or sale of real or personal property, and the disposition or distribution of any property acquired through the execution of the agreement. Property acquired by purchase by such a legal or administrative entity inits own name would not appear to be subject to the terms of Ch. 274. See, s 274.01(1), F.S., defining governmental unit for purposes of Ch. 274 as `the governing board, commission or authority of a county or taxing district of the state or the sheriff of the county'; and s 274.01(3), F.S., defining property as all tangible personal property of a nonconsumable nature owned by a governmental unit. In addition, since Ch. 274 relates only to property owned by a governmental unit as defined therein, property acquired by lease pursuant to an interlocal agreement would not be subject to the terms and conditions of Ch. 274.
Accordingly, I am of the opinion that until and unless judicially or legislatively determined otherwise, a group of county property appraisers may enter into an interlocal agreement for the joint provision and utilization of data processing and computer services.
QUESTION TWO
Your second inquiry concerns whether it is necessary to create a separate legal entity to operate the data processing and computer services or whether an organization of the particular property appraisers may be established by charter with the by-laws of such an organization setting forth the parameters for the operation of such services, including provisions for the employment of personnel, managerial responsibility and the charges and rates to be imposed for services rendered.
Subsection (5) of s 163.01, F.S. (1982 Supp.), requires that the joint exercise of powers pursuant to the act shall be made by contract in the form of an interlocal agreement. Paragraphs (a)-(r) of s 163.01(5) specify at length the provisions which an interlocal agreement may make with respect to, inter alia, the purpose of the interlocal agreement and the manner by which it will be accomplished, the funding or financial support to be provided by the parties, the manner of employing and compensating necessary personnel, the acquisition and disposition of property and `any other necessary and proper matters agreed upon by the participating public agencies.' The scope of the agreement may therefore be as broad or as narrow as the parties desire to make it, within the limits of power and authority which the participating public agencies share in common. Pursuant to s163.01(5), however, such terms and conditions are to be included within the interlocal agreement itself.
In addition, subsection (6) of s 163.01, F.S. (1982 Supp.), specifically states that the interlocal agreement may provide for one or more of the parties to the agreement to administer or execute the agreement; alternatively, subsection (7) provides that the agreement may create and provide for a separate legal or administrative entity to administer or execute the agreement, which may be a board or commission constituted pursuant to the agreement. See, s 163.01(7)(b) providing that such an entity may be authorized in its own name to enter into contracts, to employ agencies or employees, to acquire and dispose of property and to acquire, manage or operate buildings or works. Such entity also shall possess the common power specified in the agreement and may exercise it in the manner or according to the method provided in the agreement. See also, s 163.01(5)(c). And see, ss 163.01(10) and 163.01(12) which respectively provide that a public agency entering into such an agreement may appropriate funds and sell, give or otherwise supply any party designated, or the legal or administrative entity created, to operate the joint or cooperative undertaking such personnel or services as may be within its legal power to furnish.
Thus pursuant to the provisions of s 163.01, F.S. (1982 Supp.), the property appraisers participating in the interlocal agreement may designate one or more of the parties to operate the joint undertaking or they may provide for the creation of a separate legal entity, which may be a board constituted pursuant to the agreement, to undertake such a function. The terms and conditions regarding funding, the employment of personnel, the acquisition, management, operation and disposition of property and other issues relating to the administration and execution of the agreement should be set forth within the terms of the interlocal agreement itself. This office cannot, however, advise a public agency or officer as to the format or particular terms which should be included in such an agreement; such determinations must be made by the public agencies in question.
QUESTION THREE
You inquire whether the employees of the public agencies which have entered into an interlocal agreement for the purpose of acquiring and operating the computer or date processing equipment would be county employees entitled to retirement benefits.
The answer to your inquiry will depend, in part, upon the provisions of the agreement at which the participating property appraisers arrive. Pursuant to the Florida Interlocal Cooperative Act, either one or more of the parties may be designated to execute the agreement or a legal or administrative entity may be created by the interlocal agreement to perform that function. Sections 163.01(10)(a) and (12), F.S. (1982 Supp.), respectively, provide that public agencies entering into an interlocal agreement may supply the party or parties designated to execute the agreement or the legal or administrative entity created for that purpose with personnel and services. And see, s 163.01(5)(g) which permits the employing or transferring of personnel to be a part of the terms of an interlocal agreement subject to the provisions of law governing civil service and merit systems. Cf., AGO 74-147. Subsection (9)(a) of s 163.01 specifically states that `[a]ll of the privileges and immunities from liability; . . . and pensions
and relief, disability, workers' compensation, and other benefits which apply to the activity of officers, agents, or employees of any public agents or employees of any public agency when performing their respective functions within the territorial limits for their respective agencies shall apply to the samedegree and extent to the performance of such functions and dutiesof such officers, agents, or employees extraterritorially underthe provisions of any such interlocal agreement.' (e.s.)
According to your letter, however, it is contemplated that the property appraisers entering into the interlocal agreement would establish some type of legal or administrative entity as authorized in s 163.01(5)(c), F.S. (1982 Supp.), and periodically select a `board' to be in charge of the overall management of the data processing center. Under subsection (7)(b) of s 163.01 such an entity may be authorized in its own name to employ agencies or employees. Cf., Inf. Op. to Mr. Robert W. Federspiel, dated January 27, 1983, wherein this office concluded that a board created by interlocal agreement was authorized to contract with an independent private party to operate a regional wastewater treatment and disposal facility provided that such private party performed only ministerial functions and did not exercise the governmental powers or functions of the board. Subsection (7)(b) additionally provides that such an entity may be authorized to incur debts, liabilities, or obligations which do no constitute the debts, liabilities or obligations of any of the parties to the agreement. And see, s 163.01(7)(c) stating that any separate legal or administrative entity which is created by interlocal agreement does not have the authority to levy any tax or in any way to obligate financially any governmental agency participating in the agreement. Thus the independent entity created by interlocal agreement may be given authority to employ personnel in its own name and as a separate legal entity.
Any transfer to or coverage under the Florida Retirement System, Ch. 121, F.S., however, is governed by that law and the rules of the Division of Retirement of the Department of Administration. See, s 121.031, F.S., stating that the department through the division shall make such rules as are necessary for the efficient and effective administration of the system; and s 121.025, F.S., designating the director of the division as the administrator of the retirement and pension systems assigned or transferred to the Division of Retirement by law. Cf., s 122.13; s 650.05, F.S. Accordingly, any question whether individual employees are covered by the Florida Retirement System must be initially addressed to, and determined by, the Division of Retirement of the Department of Administration.
QUESTION FOUR
Your final inquiry concerns whether the Property Assessment Loan Fund created pursuant to s 195.094, F.S., may be loaned to the participating property appraisers jointly as a group or to an entity established pursuant to s 163.01, F.S. (1982 Supp.), in order to acquire the necessary computer and data processing equipment or whether such funds may only be loaned to each participating property appraiser individually.
The statutory authority given to administrative officers must be exercised in accordance with the requirements of the controlling provisions and principles of law. The Department of Revenue, like other administrative agencies, is limited by the terms of the statutes which created it and, as a creature of statute, has no inherent authority but rather possesses only those powers which have been specifically granted by statute or are necessarily implied therefrom. See generally, St. Regis Paper Co. v. State,237 So.2d 797 (1 D.C.A. Fla., 1970), affirmed, 257 So.2d 253 (Fla. 1971); State ex rel. Greenberg v. Florida State Board of Dentistry, 297 So.2d 628 (1 D.C.A. Fla., 1974), cert. dismissed,300 So.2d 900 (Fla. 1974); Department of Health and Rehabilitative Services v. Florida Psychiatric Society, Inc., 282 So.2d 1280 (1 D.C.A. Fla., 1980). Section 195.094, F.S., provides that the monies deposited in the Property Assessment Loan Fund are appropriated to, and may be loaned by, the Department of Revenue to any property appraiser to assist the county assessment program in appraising all or a portion of the county and in equipping the property appraiser's office with capital outlay items. Section 195.094(2), F.S. The scope of this statutory provision does not appear to have been judicially determined, nor does an examination of the enabling legislation provide much assistance in the interpretation of this statute with respect to the instant inquiry. See, s 7, Ch. 73-172, Laws of Florida, as amended by Ch. 77-102, Laws of Florida. I find no evidence, however, that the Legislature intended to authorize the department to loan such monies from the trust fund to a separate legal or administrative entity created by interlocal agreement or jointly to a group of property appraisers, nor has any such evidence of legislative intent been brought to the attention of this office. Rather the statute appears to contemplate that loans from such funds shall be made to individual property appraisers. See, e.g., s 195.094(6), F.S., stating that in the event that any property appraiser does not pay in full any installment due under a loan extended under the provisions of s 195.094, the Department of Revenue shall reduce the county distribution under s 218.23 in an amount equal to the unpaid balance then due, which amount the county may deduct from the subsequent quarterly payment due the property appraiser for his services. Cf., Rules 12D-15.02-12D-15.03, F.A.C. This office has previously stated that if there is a reasonable doubt as to the lawful exercise of a particular power, the further exercise of such power should be arrested. See, e.g., AGO's 75-161, 80-44; State ex rel. Greenberg v. Florida State Board of Dentistry, supra; Gessner v. Del-Air Corporation, 17 So. 522 (Fla. 1944). Thus while it appears that monies from the Property Assessment Loan Fund may be loaned to the individual property appraisers in order to purchase necessary computer and data processing equipment, I cannot conclude that s 195.094 authorizes or provides for the loaning of trust funds to a group of property appraisers jointly or to a legal or administrative entity created by interlocal agreement.
Accordingly I am of the opinion, until legislatively or judicially determined otherwise, that monies from the Property Assessment Loan Fund created pursuant to s 195.094 may not be loaned to the property appraisers jointly as a group or to a legal or administrative entity created by interlocal agreement.
In sum, I am of the opinion, until and unless judicially or legislatively determined otherwise, that
 (1) A group of county property appraisers may enter into an interlocal agreement for the joint provision and utilization of data processing and computer services;
 (2) The property appraisers may designate one or more of the parties to administer or execute the joint undertaking or they may provide for the creation of a separate legal or administrative entity to perform such a function; while the terms and conditions regarding the joint or cooperative undertaking should be provided in the interlocal agreement, this office cannot advise the public agencies as to the format or particular terms which should be included;
 (3) Any question whether employees of the public agencies participating in the interlocal agreement or of the legal or administrative entity created thereunder would be county employees for retirement purposes should be referred to, and initially determined by, the Division of Retirement of the Department of Administration;
 (4) Monies from the Property Assessment Loan Fund created pursuant to s 195.094, F.S., may be loaned to the individual property appraisers in order to acquire necessary computer and data processing equipment; however, this office cannot conclude that such funds may be loaned to the participating property appraisers as a group or to the legal or administrative entity created by interlocal agreement.
Sincerely,
Jim Smith, Attorney General
Prepared by: Joslyn Wilson, Assistant Attorney General