Mr. Brian D. Lambert Attorney for the Ocala Housing Authority 121 N.W. Third Street Ocala, Florida 32670
Dear Mr. Lambert:
This is in response to your request for an Attorney General's Opinion on substantially the following questions:
 1) IS THE OCALA HOUSING AUTHORITY AUTHORIZED BY CH. 421, F.S., TO ENFORCE THE MARION COUNTY FAIR HOUSING ORDINANCE ENACTED FOR THE PURPOSE OF ELIMINATING HOUSING DISCRIMINATION?
 2) ARE THE OCALA HOUSING AUTHORITY AND THE MARION COUNTY BOARD OF COUNTY COMMISSIONERS AUTHORIZED UNDER PART I, CH. 421, F.S., TO ENTER INTO AN INTERLOCAL AGREEMENT PURSUANT TO CH. 163, F.S., WHICH PROVIDES FOR THE DELEGATION OF THE COUNTY'S POWER TO ADMINISTER AND ENFORCE A COUNTYWIDE FAIR HOUSING ORDINANCE IN THE MUNICIPALITY AND IN THE UNINCORPORATED AREAS OF THE COUNTY?
Your letter of inquiry and supplementary materials indicate that in December 1984, the Board of County Commissioners of Marion County, Florida, enacted Ordinance Number 84-28 the "Fair Housing Ordinance" to obtain adequate housing for all persons regardless of race, color, religion, sex, national origin, place of birth, age (provided the person has the capacity to contract), marital status, ancestry, military status, or physical disability by prohibiting and eliminating discrimination in housing in Marion County. The ordinance creates the Marion County Fair Housing Board to administer and enforce the fair housing ordinance; however, there is currently no county housing authority in operation. You therefore inquire whether the Ocala Housing Authority has the authority to act as the county's fair housing board. Based on the information you have submitted with your inquiry I must assume that the Ocala Housing Authority is a public corporation created pursuant to and operating according to the provisions of Ch. 421, F.S.
QUESTION ONE
Part I, Ch. 421, F.S., the "Housing Authorities Law" provides for the identification and clearance of slum areas in the state and the provision of safe and sanitary dwelling accommodations for persons of low income. See, s. 421.02, F.S. The "area of operation" of an authority is set forth in s. 421.03(6), F.S., which states that:
 (a) In the case of a housing authority of a city having a population of less than 25,000, [the area of operation] shall include such city and the area within 5 miles of the territorial boundaries thereof; and
 (b) In the case of a housing authority of a city having a population of 25,000 or more [the area of operation] shall include such city and the area within 10 miles from the territorial boundaries thereof; provided however, that the area of operation of a housing authority of any city shall not include any area which lies within the territorial boundaries of some other city as herein defined; and further provided that the area of operation shall not extend outside of the boundaries of the county in which the city is located and no housing authority shall have any power or jurisdiction outside of the county in which the city is located.
Within its area of operation, a housing authority is empowered to exercise "the public and essential governmental functions" set forth in Ch. 421, F.S., which include inter alia, the power to contract, to rent and lease dwellings, operate housing projects and to invest funds not required for immediate disbursement in certain property or securities. Section 421.08(1)-(5), F.S. In addition, an authority is empowered by s. 421.08(6)-(7), F.S.:
 (6) Within its area of operation: to investigate into living, dwelling and housing conditions and into the means and methods of improving such conditions; to determine where slum areas exist or where there is a shortage of decent, safe and sanitary dwelling accommodations for persons of low income; to make studies and recommendations relating to the problem of clearing, replanning and reconstruction of slum areas, and the problem of providing dwelling accommodations for persons of low income, and to cooperate with the city, the county, the state or any political subdivision thereof in action taken in connection with such problems; and to engage in research, studies and experimentation on the subject of housing.
 (7) Acting through one or more commissioners or other person or persons designated by the authority; to conduct examinations and investigations and to hear testimony and take proof under oath at public or private hearings on any matter material for its information; to administer oaths, issue subpoenas requiring the attendance of witnesses or the production of books and papers and to issue commissions for the examination of witnesses who are outside of the state or unable to attend before the authority, or excused from attendance; to make available to appropriate agencies, including those charged with the duty of abating or requiring the correction of nuisances or like conditions, or of demolishing unsafe or insanitary structures within its area of operation, its findings and recommendations with regard to any building or property where conditions exist which are dangerous to the public health, morals, safety or welfare.
An administrative agency or officer possesses no power not granted by statute, either expressly or by necessary implication, and any reasonable doubt as to the lawful existence of a particular power sought to be exercised must be resolved against the exercise thereof. State ex rel. Greenberg v. Florida State Board of Dentistry, 297 So.2d 628 (1 D.C.A. Fla., 1974), cert. dismissed,300 So.2d 900 (Fla. 1974); City of Cape Coral v. GAC Utilities, Inc., of Florida, 281 So.2d 493 (Fla. 1973). Implied powers accorded administrative agencies must be indispensable to powers expressly granted, that is, those powers which are necessarily or fairly or reasonably implied as an incident to those powers expressly granted. See generally, 1 Am.Jur.2d Administrative Law and Procedure s. 33, p. 846. See, State v. Atlantic Coast Line R. Co., 47 So. 969, 974 (Fla. 1908); Keating v. State, 167 So.2d 46,51 (1 D.C.A. Fla., 1964); Gardinier, Inc. v. Department of Pollution Control, 300 So.2d 75, 76 (1 D.C.A. Fla., 1974); St. Regis Paper Company v. State, 237 So.2d 797, 799 (1 D.C.A. Fla., 1970); and Williams v. Florida Real Estate Commission,232 So.2d 239, 240 (4 D.C.A.Fla., 1970). Section 421.08, F.S., specifically addresses the scope of the powers of housing authorities under Ch.421, F.S., by providing that such authorities "constitute a public body corporate and politic, exercising the public and essential governmental functions set forth in this chapter. . . ." (e.s.)
Nothing in Part I, Ch. 421, F.S., as amended, appears to authorize, either directly or by implication, a housing authority to enforce nondiscriminatory housing ordinances. The statutorily prescribed purpose of housing authorities created pursuant to Part I, Ch. 421, F.S., is the identification and clearance of slum areas in the state and the provision of safe and sanitary dwelling accommodations for persons of low income. No provision of Part I, Ch. 421, F.S., of which I am aware or to which you have drawn my attention, authorizes, either directly or by necessary implication, the Ocala Housing Authority to enforce a Marion County ordinance which assures equal housing opportunities and which was enacted to prohibit and eliminate discrimination in housing. Accordingly, I am of the opinion that the Ocala Housing Authority is not empowered to enforce such a fair housing ordinance.
QUESTION TWO
Section 421.11(2), F.S., provides that:
 Any county housing authority may enter into an interlocal agreement with one or more local governing bodies pursuant to the provisions of s. 163.01, the Florida Interlocal Cooperation Act of 1969, with respect to projects or programs located within the county or an adjacent county, and any city housing authority may enter into such agreement with respect to projects or programs located within the county, provided that no power granted an authority under s. 421.08 may be reserved to or exercised by a local government body under such agreement.
Section 163.01, F.S., is entitled the "Florida Interlocal Cooperation Act of 1969." Section 163.01(1), F.S. The purpose of the act is to permit units of local government to make the most efficient use of their powers by enabling them to cooperate with other localities in providing services and facilities to serve the needs and development of local communities. Section 163.01(2), F.S. Pursuant to s. 163.01(4), F.S., a public agency (defined in subsection[3][b] of the act to include a county, a city and certain public authorities) may exercise jointly with any other public agency any power, privilege or authority which such agencies share in common and which each might exercise separately. And see, AGO 84-86 stating that no interlocal agreement entered into pursuant to s. 163.01(4) may confer any greater or additional power, privilege or authority than is possessed by each of the contracting agencies or permit the exercise of powers not shared in common and not separately exercisable by each such agency; AGO's 84-40, 77-16, 77-15. Cf., AGO 74-220. Based on the clear language of s. 163.01(4) and previous opinions of this office it is apparent that a public agency cannot, through the vehicle of an interlocal agreement, acquire the authority to enforce an ordinance which it does not possess independently of such an agreement, nor do the provisions of s. 421.11(2), F.S., confer the necessary authority. Cf., AGO 72-361. As I have stated in my response to question one, it does not appear that a housing authority may enforce a fair housing ordinance. Therefore, as such authority is not exercisable separately by the entities which would enter into the interlocal agreement, such an agreement cannot confer this additional power or authority on the Ocala Housing Authority.
In sum, it is my opinion that the Ocala Housing Authority created pursuant to Part I, Ch. 421, F.S., and primarily responsible for the identification and clearance of slum areas and the provision of safe and sanitary dwelling accommodations for persons of low income, is not authorized to enforce the Marion County Fair Housing Ordinance enacted for the purpose of eliminating housing discrimination. Further, the Ocala Housing Authority and the Marion County Board of County Commissioners may not enter into an interlocal agreement pursuant to Part I, Ch. 163, F.S., providing for the delegation of the county's power to administer and enforce a countywide fair housing ordinance in Ocala and in the unincorporated areas of the county since the authority to enforce such an ordinance is not independently exercisable by the Ocala Housing Authority.
Sincerely,
Jim Smith Attorney General
Prepared by:
Gerry Hammond Assistant Attorney General