The Honorable Tom Gallagher Treasurer State of Florida The Capitol Tallahassee, Florida 32399-0300
Dear Mr. Treasurer:
On behalf of the members of the Florida Seed Capital Board, you have asked substantially the following questions:
1. Generally, what effect does the Legislature's creation of the Florida Seed Capital Board within the Department of Commerce, pursuant to section 159.445(3), Florida Statutes, have on the exercise by the board of its powers and duties?
2. Is the Florida Seed Capital Board authorized by section 159.445(4), Florida Statutes, to select and direct an executive director independently or is permission or concurrence of the Department of Commerce necessary?
3. Is the board authorized by section 159.445(5)(c), (f), (k), (l), and (n), Florida Statutes, to independently implement programs utilizing monies appropriated for such purposes without seeking the permission or concurrence of the Department of Commerce?
In sum:
1. The Florida Seed Capital Board is in the nature of a commission as described in section 20.03(10), Florida Statutes, i.e., the board exercises its statutorily prescribed powers independently.
2. The Florida Seed Capital Board is authorized to appoint an executive director pursuant to section 159.445(4), Florida Statutes. However, the board must comply with any applicable provisions of Florida law relating to personnel matters for state governmental commissions.
3. The Florida Seed Capital Board is authorized to autonomously exercise the statutory authority set forth in section 159.445(5)(c), (f), (k), (l), and (n), Florida Statutes, but must comply with any and all applicable statutory and administrative requirements.
The Florida Seed Capital Board was created within the Department of Commerce. The board administers the Florida Seed Capital Fund.[1]
The Florida Seed Capital Fund was established:
"[T]o provide equity financing for the research and development activities of new and existing high technology small business[2]
in the state. It is the intent of the Legislature that such financing enable such small businesses to acquire technical and management assistance and to conduct research and development activities that lead to new or improved high technology[3]
products or services."[4]
The members of the Florida Seed Capital Board are the Treasurer or his designee, the Comptroller or his designee, and seven members appointed by the Governor subject to Senate confirmation.[5]
Members of the board are not compensated for their service but are to be reimbursed for per diem and travel as provided in section112.061, Florida Statutes.[6] In addition, board members are required to file a public disclosure of their financial interests pursuant to section 8, Article II, Florida Constitution, and the statutes relating to financial disclosure.[7]
Question One
It is a well-settled principle of law that administrative bodies have no common law powers. They are creatures of the Legislature and what powers they have are limited to the statutes that create them.[8] It has also been held that if there is a reasonable doubt as to the lawful existence of a particular power which is being exercised, the further exercise of the power should be arrested.[9] Statutory agencies do not possess any inherent powers and such agencies are limited to powers granted either expressly or by necessary implication from the statutes creating them.[10]
In Attorney General Opinion 81-67 this office was asked to delineate the legal and administrative relationship between the Department of State and the Historic Preservation Boards which were created within the department by Chapter 266, Florida Statutes. Several of the historic preservation boards operated under the following statutory language:
"[Such boards] shall exercise their powers, duties, and functions as prescribed by law, subject to budget review and approval by the Secretary of State. The boards of trustees shall not be placed within a division of the Department of State, but, administratively, shall be directly under the supervision of the Secretary of State."
In light of this language this office stated that the Department of State was given no power to approve or direct or execute any of the powers, duties, and functions vested in the boards by their respective statutes. The boards were determined to be administratively under the supervision of the Secretary of State and were subject to his budget review and approval, but otherwise, they exercised their powers, duties, and functions as the statutes prescribed.
One of the historic preservation boards, however, was not made subject to budget review and approval by the Secretary of State, nor was that board placed administratively under the direct supervision of the Secretary of State. In the absence of statutory direction, it was concluded that this particular board was a "commission" as defined in section 20.03(10), Florida Statutes, exercising delegated legislative or quasi-legislative powers independently of the Secretary of State. This office determined that "[t]he [board] is not subject to budget review or approval by the Secretary of State nor does the Secretary of State or Department of State exercise any authority, administrative or otherwise, over such board." A "[c]ommission," as that term is defined in Chapter 20, Florida Statutes, relating to the organizational structure of state government, is "a body created by specific statutory enactment within a department, the office of the Governor, or the Executive Office of the Governor and exercising limited quasi-legislative or quasi-judicial powers, or both, independently of the head of the department or the Governor."[11]
Similarly, in Attorney General Opinion 87-6 this office considered the independent status of the Florida Developmental Disabilities Planning Council. The council was created as "an inter-departmental and interagency advisory body . . . for programs and services affecting persons with developmental disabilities . . . ." Pursuant to its enabling legislation the planning council was "assigned to the office of the Secretary of Health and Rehabilitative Services for administrative purposes and fiscal accountability . . . but it shall otherwise function independent of the control, supervision, and direction of the department."
Based on the plain language of the statute, this office concluded that the Florida Developmental Disabilities Planning Council was an independent entity of the Department of Health and Rehabilitative Services.
The Florida Seed Capital Board has been delegated various legislative powers, such as the power of the state to contract,[12] and the Department of Commerce has been granted no express powers over this board by law. Thus, the Florida Seed Capital Board would appear to be in the nature of a commission as defined in section 20.03(10), Florida Statutes, within the Department of Commerce.[13] The Florida Seed Capital Board exercises its statutory powers independently of the Department of Commerce but is only authorized to exercise those powers expressly set forth in section 159.445, Florida Statutes, and those powers which are necessarily implied therefrom.[14]
Question Two
Pursuant to section 159.445(4), Florida Statutes, the board is authorized to "appoint an executive director to serve as the chief administrative and operational officer of the board and to perform the duties assigned to him by the board."
The clear language of the statute authorizes the board to appoint an executive director. The members of the board may exercise an express power conferred by law.[15] The statute does not operate to vest any duty, responsibility, or authority in the Department of Commerce concerning personnel of the board.[16]
As this office concluded in Attorney General Opinion 87-6, the independence of an entity such as the Florida Developmental Disabilities Planning Council is limited by the provisions of Florida law relating to personnel matters. In that opinion it was noted that the council was statutorily authorized to "appoint, and may remove, an executive director, who shall serve under the direction, supervision, and control of the council." Further, the executive director was authorized, with the consent of the council, to "employ such personnel as may be necessary to perform adequately the functions of the council, within budgetary limitations." The council was empowered to "adopt bylaws and policies . . . [to] include duties of officers, a process for selecting officers, duties of committees, quorum requirements for committees, provisions for special or ad hoc committees and policies for council staff."
Despite the conclusion that the Florida Developmental Disabilities Planning Council possessed great independence in personnel matters, the opinion concluded that the council's independence was constrained by other provisions of law contained in Chapter 110, Florida Statutes, and the rules adopted thereunder.
Similarly, the Florida Seed Capital Board's independence in such matters is constrained by other provisions of law and rules adopted thereunder. Section 110.201, Florida Statutes, states that the Department of Administration shall develop and administer uniform personnel rules relating to employees and positions in the career service and requiring employing agencies to operate within such uniform rules. The definition of a "[s]tate agency" or "agency" for purposes of Chapter 110, Florida Statutes, includes a commission or board of the executive branch of state government.[17] Section 110.402(1), Florida Statutes, creates the Senior Management Service "as a separate system of personnel administration for positions in the executive branch the duties and responsibilities of which are primarily and essentially policymaking or managerial in nature."
The executive director of the Florida Seed Capital Board would appear to be a member of the Senior Management Service.[18] As there is no provision for the salary and benefits for such position set forth in the statutes, these shall be set by the Department of Administration in accordance with the rules of the Senior Management Service.[19]
Question Three
Section 1(c), Article VII, Florida Constitution, provides: "No money shall be drawn from the treasury except in pursuance of appropriation made by law." Section 215.35, Florida Statutes, states that "[n]o warrant shall issue until same has been authorized by an appropriation made by law[.]" Further, section216.192(1), Florida Statutes, states, in part, that:
"The Comptroller shall authorize all expenditures to be made from the appropriations on the basis of such releases and in accordance with the approved budget,[20] and not otherwise. Expenditures shall be authorized only in accordance with legislative authorizations."[21]
According to your letter, monies have been appropriated to the Florida Seed Capital Board for the purpose of implementing programs authorized by section 159.445 (5)(c), (f), (k), (l), and (n), Florida Statutes.
Section 159.445(5)(c), (f), (k), (l) and (n), Florida Statutes, provides as follows:
"(5) The powers and duties of the board shall include, but not be limited to, the power to: (c) Make and execute contracts and other necessary instruments. (f) Encourage financial institutions to participate in consortia for investment in high technology small business concerns. (k) Accept funds from any source to carry out the purposes of this section. (l) Create, issue, hold, buy, and sell stock, evidences of indebtedness, and other capital participation instruments and underwrite the creation of a capital market for these securities in a manner designed to enhance development of capital ownership. (n) Engage in special programs to enhance the development of high technology small business concerns."
This office cannot provide the Florida Seed Capital Board with a detailed analysis of hypothetical, authorized actions which may be taken by the board pursuant to the authority contained in this statute. You have given me no specifics relating to how the board proposes to exercise any of these powers and my comments must, therefore, be of a general nature.
The Florida Seed Capital Board is autonomous in the exercise of its statutory powers. However, these statutory powers are constrained by the statutes and administrative rules which apply to the conduct of state governmental business.
Thus, for example, while the board is authorized to "make and execute contracts and other necessary instruments," pursuant to section 159.445(5)(c), Florida Statutes, the board is bound to do so pursuant to statutes and administrative rules applicable to all other state boards and commissions.
Therefore, the Florida Seed Capital Board is authorized to exercise the statutory powers conferred by section 159.445(5)(c), (f), (k), (l), and (n), Florida Statutes, but must do so with the provision of any applicable statutes and administrative rules.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] Section 159.445(3), Fla. Stat.
[2] "[S]mall business" is defined for purposes of s. 159.445(2), Fla. Stat., to mean "an independently owned and operated business concern which is not an affiliate or subsidiary of a business dominant in its field of operation and which employs 25 or fewer full-time employees."
[3] Pursuant to s. 159.445(2), Fla. Stat., "High technology" for purposes of the statute means "a business which provides products or services in areas including, but not limited to, robotics, automation, biotechnology, biomedical devices, specialized materials including recyclable materials, computer and microprocessor applications and technology, semiconductors, integrated circuits, fiber optics, and telecommunications."
[4] Section 159.445(1), Fla. Stat.
[5] Section 159.445(3)(a), Fla. Stat.
[6] Section 159.445(3)(e), Fla. Stat.
[7] Section 159.445(3)(f), Fla. Stat.
[8] See, e.g., State ex rel. Greenberg v. Florida State Board ofDentistry, 297 So.2d 628 (Fla. 1st DCA 1974); Florida IndustrialCommission v. National Trucking Company, 107 So.2d 397 (Fla. 1st DCA 1958).
[9] State ex rel. Greenberg v. Florida Board of Dentistry,supra; State v. Atlantic Coast Line R. Co., 47 So. 969 (Fla. 1908).
[10] St. Regis Paper Company v. State, 237 So.2d 797 (Fla. 1st DCA 1970); Florida Industrial Commission v. National TruckingCompany, supra.
[11] Section 20.03(10), Fla. Stat.
[12] Section 159.445(5)(c), Fla. Stat.
[13] Cf., Op. Att'y Gen. Fla. 81-67 (1981) (although the Historic Boca Raton Preservation Board of Commissioners is created within the Department of State by Part V of Ch. 266, Fla. Stat., that board is not subject to budget review and approval by the Secretary of State or the Department of State and neither has been given any statutory authority to approve, direct or execute any of the powers, duties or functions vested in that board of commissioners under Part V of Ch. 266, Fla. Stat.).
[14] See generally, 67 C.J.S. Officers ss. 190, 192 (1978); 73 C.J.S. Public Administrative Law and Procedure s. 50 (1983).
[15] See, e.g., Lang v. Walker, 35 So. 78, 80 (Fla. 1903);Gessner v. Del-Air Corporation, 17 So.2d 522 (Fla. 1944); Ops. Att'y Gen. Fla. 71-28 (1971), 78-77 (1978), and 78-135 (1978).
[16] See, Op. Att'y Gen Fla. 87-6 (1987), wherein it is determined that s. 393.001(6), Fla. Stat., does not operate to vest any duty, responsibility or authority in the Department of Health and Rehabilitative Services concerning personnel policies adopted by the Florida Developmental Disabilities Planning Council.
[17] And see, Ch. 216, Fla. Stat., relating to planning and budgeting for state agencies and s. 216.011(ll), defining "[s]tate agency" or "agency" as "any official, officer, commission, board, authority, council, committee, or department of the executive branch . . . of state government."
[18] Pursuant to s. 110.402(2), Fla. Stat., the Senior Management Service is limited to those positions which are exempt from the Career Service System. Section 110.205(2)(i), Fla. Stat., exempts from the Career Service System all executive directors of all departments and "those positions determined by the department to have managerial responsibilities comparable to such positions . . . ." While this office has not been advised whether the Department of Administration has determined that the Executive Director of the Florida Seed Board is a "position determined by the department to have managerial responsibilities comparable to" the executive director of a department or the director of a division, an undated letter from the Office of the Governor to Mr. Donald Calder, Vice Chairman of the board indicates that the office considered the executive director of the board to be "a Department of Commerce salaried employee." See, letter from Ms. Patricia Woodworth, Director, Office of Planning and Budgeting, Office of the Governor, to Mr. Donald Calder, Vice Chairman, Florida Seed Capital Board, received by the Secretary of Commerce, September 18, 1990.
[19] See, s. 110.205(2)(i) and (j), Fla. Stat. And see, Op. Att'y Gen. Fla. 87-6 (1987) (the Florida Developmental Disabilities Planning Council must follow and abide by the provisions of Florida law relating to personnel matters). Cf., Op. Att'y Gen. Fla. 80-29 (1980) (the Department of Administration has the authority and duty to set the salary of the executive director of the Commission on Hispanic Affairs).
[20] See, s. 216.181, Fla. Stat., regarding approved budgets for operations and fixed capital outlay.
[21] Cf., Op. Att'y Gen. Op. 76-236 (1976) (Legislative failure to appropriate funds for travel expenses and staff support personnel of the State Board of Building Codes and Standards does not operate to abolish the board. The board continues in existence until the statutory authority for its existence is either expressly or impliedly repealed by the Legislature. To the extent that the board may operate under this legislatively imposed fiscal handicap, it does so with undiminished power and authority); Op. Att. Gen Op. 75-96 (1975).